**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff–Appellant,**

v.

**TENNESSEE VALLEY AUTHORITY, Tennessee Valley Trades and Labor Council, and Building and Construction Trades Department, AFL–CIO, Defendants–Appellees.**

No. 95–6706.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1996.

Decided March 12, 1997.

Charles W. Van Beke (briefed), Herbert S. Sanger, Jr., General Counsel (argued and briefed), Wagner, Myers & Sanger, Knoxville, TN, for plaintiff–appellant.

A. Jackson Woodall (argued and briefed), Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, Sr., Litigation Atty. (briefed), Linda J. Sales–Long (briefed), Tennessee Valley Authority, Knoxville, TN, for Tennessee Valley Authority.

Robert Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, Richard M. Resnick (briefed), Martin J. Crane (argued), Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for Tennessee Valley Trades and Labor Council, Building and Const. Trades Council, AFL–CIO.

Before KENNEDY, JONES, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

The plaintiff below, the International Association of Machinists and Aerospace Workers ("IAM"), appeals the dismissal of its complaint by the district court, which determined that all of IAM's federal claims were time barred, and that any state claims were preempted by federal law. For the reasons discussed below, we affirm.

## I. Facts

On May 9, 1991, the Tennessee Valley Authority ("TVA") entered into a "Project Maintenance and Modifications Agreement" ("Project Agreement") with the Tennessee Valley Trades and Labor Council ("Council"), an organization comprised at that time of fifteen unions, including IAM, whose members were employed by the TVA. The Project Agreement governed the use of union labor by the TVA's contractors, and those contractors were also required to sign the agreement. Shortly after entering into the agreement, several of those contractors proceeded to employ members of the United Brotherhood of Carpenters and Joiners of America ("Carpenters") for power plant maintenance work. Members of IAM traditionally had performed such work directly for the TVA, and IAM interprets the Project Agreement to require the contractors to follow the TVA's historical staffing practices.

Accordingly, IAM filed five grievances against a total of thirty-three contractors, alleging that they had breached the Project Agreement by failing to hire IAM members. Under the terms of the Project Agreement, grievances are heard by the Joint Administrative Committee ("JAC"), which is comprised of representatives from the TVA, its contractors, and the Council. The JAC unanimously rejected each grievance, determining in each instance that the contractors were not bound by the TVA's prior practice and that they had not violated the Project

Agreement.[1] IAM requested arbitration for the first four grievances. The JAC denied each of those requests, pursuant to its interpretation of the Project Agreement that arbitration is not available for unanimous JAC decisions.[2] IAM did not file an arbitration request for its fifth grievance.

On October 1, 1993, IAM brought suit in the United States District Court for the Middle District of Tennessee against three defendants: the TVA, the Council, and the Building and Construction Trades Department of the AFL–CIO ("BCTD"), a national organization of trade unions to which most members of the Council, including the Carpenters but not including IAM, belong.[3] The complaint, as amended, alleged breach of contract against the TVA and the Council; inducement of breach of contract against the TVA and the BCTD; and breach of fiduciary duty against the Council. The complaint sought damages, specific performance either in the form of substantive relief or in the form of an order to submit the dispute for arbitration, and a declaratory judgment.

The district court dismissed the complaint as time barred. The court applied *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), to hold that the six-month statute of limitations under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), governed each of IAM's claims. The court further determined that the statute began to run, at the latest, on October 2, 1992, the date on which the JAC refused to submit IAM's fourth and largest grievance for arbitration.

1. The JAC denied IAM's first three grievances, each of which was filed against one contractor, on January 21, 1992, February 19, 1992, and March 17, 1992, respectively. The JAC denied IAM's fourth grievance against 29 contractors on August 4, 1992, and it denied IAM's final grievance against one contractor on November 2, 1993, after IAM filed its complaint in this action.

2. The JAC denied arbitration for the first two grievances on March 31, 1992, for the third grievance on April 13, 1992, and for the fourth and largest grievance on October 2, 1992.

3. The complaint alleged that the BCTD effectively controlled the Council and influenced the JAC's decision to find in favor of the Carpenters and against IAM.

IAM raises four arguments on appeal. First, it argues that this court should not import the *DelCostello* statute of limitations to a case involving the TVA, which is exempt from the NLRA, *see* 29 U.S.C. § 152(2), but should instead apply the Tennessee three-year statute of limitations for breach of contract actions. Second, it argues that the statute did not begin to run until November 2, 1993, the date on which the JAC rejected its fifth and final grievance. Third, it argues that, even if its breach of contract and breach of fiduciary duty claims are barred, its inducement of breach claims survive because they arise solely under state law. Finally, it argues that its request for a declaratory judgment is not barred. We discuss each of these arguments in turn.

## II. Breach of Collective Bargaining Agreement and Breach of Duty of Fair Representation Claims

### A. Which Statute of Limitation Applies

■ Too often, Congress creates a federal cause of action, but neglects to provide a statute of limitations for that claim.[4] When a court is required to determine the limitations period applicable to such a claim, it engages in an inquiry into Congressional intent. The usual practice of the federal courts has been to apply the forum state's statute of limitations for the state law claim that provides the closest analogy to the federal cause of action. "Because this penchant to borrow from analogous state law is not only longstanding, but settled," *North Star Steel Co. v. Thomas,* ——

4. In response to frequent requests from the federal courts to end this practice, Congress has provided a modicum of relief by enacting 28 U.S.C. § 1658, which provides a residual four-year limitations period for causes of action created by after-enacted statutes. IAM correctly has declined to argue that its claims are subject to this statute. To the extent that the claims rest on the TVA Act, that Act predates § 1658; to the extent that they rest on federal common law, they do not "aris[e] under an Act of Congress," and so are not subject to the statute. *See Kurinsky v. United States,* 33 F.3d 594, 599 (6th Cir. 1994) (*Bivens* actions not subject to § 1658), *cert. denied,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

U.S. ——, ——, 115 S.Ct. 1927, 1930, 132 L.Ed.2d 27 (1995) (internal citations omitted), courts ordinarily interpret Congressional silence to evince an intent to follow that practice.[5]

■ However, in some circumstances, the application of the state limitations period would be "at odds with the purpose or operation of federal substantive law," or would "frustrate or interfere with the implementation of national policies." *DelCostello*, 462 U.S. at 161, 103 S.Ct. at 2289. In such cases, courts follow the common sense presumption that "Congress would not wish courts to apply a limitations period that would only stymie the policies underlying the federal cause of action," *North Star Steel*, —— U.S. at ——–——, 115 S.Ct. at 1930–31, and instead apply the limitations period from an analogous federal statute, if one is available. However, the Supreme Court has cautioned that such cases are rare, and that a court should "decline to borrow a state statute of limitations only 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989), *quoting DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294–95.

We are called upon to determine whether the application of a state limitations period to IAM's lawsuit would impede federal policies in a way similar to that which motivated the *DelCostello* Court to borrow a federal limitations period. In that case, a union member had filed a grievance against his employer alleging breach of a collective bargaining agreement, pursuant to the grievance procedures established by that agreement. After the grievance was rejected, the union member filed a hybrid action against the employer for the alleged breach under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and against the union for breach of its federal common law duty of fair representation in the grievance proceedings.[6] No federal statute provided a statute of limitations for either the LMRA claim or the federal common law claim. The Court rejected the notion that the case was directly analogous to a state law contract suit; instead, the suit amounted to "a direct challenge to the private settlement of disputes," with "no close analogy in ordinary state law." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291 (internal citations omitted). Accordingly, the Court declined to apply the three-year state statute of limitations for contract claims, as such a lengthy period would be contrary to the parties' interests in the finality of the grievance and arbitration procedures created by the collective bargaining agreement.

> "[T]he grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. . . . This system, with its heavy emphasis on grievance, arbitration, and the law of the shop, could easily become unworkable if a decision which has given meaning and content to the terms of an

---

**5.** Until 1946, the Supreme Court did not engage in a search for implied Congressional intent in such cases, but instead reasoned that, under the Rules of Decision Act (now codified at 28 U.S.C. § 1652), the state statute of limitations applied of its own force in the absence of a federal pronouncement. *See M'Cluny v. Silliman*, 28 U.S. (3 Pet.) 270, 277, 7 L.Ed. 676 (1830). In *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946), the Court recharacterized the inquiry as one of interstitial lawmaking in light of perceived legislative intent. Although individual Justices have suggested that the Court should return to its original practice, *see Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 158, 107 S.Ct. 2759, 2768, 97 L.Ed.2d 121 (1987) (Scalia, J., concur-

ring in the judgment); *DelCostello*, 462 U.S. at 173, 103 S.Ct. at 2295 (Stevens, J., dissenting), the Court continues to follow the latter approach. *See North Star Steel*, —— U.S. at ——–——, 115 S.Ct. at 1930–31; *DelCostello*, 462 U.S. at 159 n. 13, 103 S.Ct. at 2288 n. 13.

**6.** The Court determined in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that, since federal law usually binds an employee to the result of the grievance and arbitration proceedings established by a collective bargaining agreement, federal law also presumes that the employee's union has a duty to represent the employee fully and fairly in those proceedings.

agreement, and even affected subsequent modifications of that agreement, could suddenly be called into question as much as [three] years later."

*Id.* at 169, 103 S.Ct. at 2293 (ellipses and brackets in original), *quoting United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 63–64, 101 S.Ct. 1559, 1564–65, 67 L.Ed.2d 732 (1981) (internal quotations omitted).

The Court therefore turned instead to the six-month limitations period created under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), noting that the statute evinces a general intent that "the relatively rapid final resolution of labor disputes [is] favored by federal law," 462 U.S. at 168, 103 S.Ct. at 2292, and that the considerations relevant to the limitations period for actions under the NLRA—finality of private settlements, the stability of bargaining relationships, and the employee's interest in fair treatment—are identical to the considerations present in hybrid § 301/fair representation actions. *Id.* at 171, 103 S.Ct. at 2294. Therefore, the Court determined that § 10(b) "clearly provides a closer analogy than available state statutes," *id.* at 172, 103 S.Ct. at 2294, and applied the six-month period.

■ This case would seem to fall squarely into the *DelCostello* rule, given that the plaintiff in this case (albeit itself a union) has brought a hybrid action against an employer for breach of a collective bargaining agreement and against a consortium of unions for breach of the duty of fair representation in grievance and arbitration proceedings. However, the employer in this case, the TVA, is a federal corporation, and is specifically exempted from the NLRA, *see* 29 U.S.C. § 152(2); the LMRA, *see* 29 U.S.C. § 142(3); and even the parallel labor relations provisions for federal employers under the Federal Labor Relations Act, *see* 5 U.S.C. § 7103(a)(3)(E). Its authority to enter into collective bargaining agreements is derived from none of these sources, but instead from

§ 3 of the TVA Act, 16 U.S.C. § 831b, which broadly empowers the TVA to "provide a system of organization to fix responsibility and promote efficiency" among its personnel. IAM argues that the TVA's exemptions from all three federal labor statutes demonstrate that all of its TVA-related causes of action are solely creatures of state law. IAM argues further that the TVA's specific exemption from the NLRA evinces a Congressional intent that its claim against the TVA be subject to a state statute of limitations. Therefore, IAM concludes that we should apply the three-year Tennessee statute of limitations for contract actions, Tenn.Code Ann. § 28–3–105(3).[7]

IAM's first argument is ill-conceived, for this court has already determined that federal law governs the scope of the duties of the TVA and its employees' unions under collective bargaining agreements. In *Bowman v. Tennessee Valley Auth.,* 744 F.2d 1207 (6th Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), this court noted that a TVA union's federal common law duty of fair representation is identical to that of a union whose members all work for private employers:

> [N]either TVA nor the unions contest the district court's conclusion that the unions are subject to a duty of fair representation. This is so because TVA's authority to bargain collectively with the unions as the exclusive representatives of employees in Bowman's classification derives from provisions of the TVA Act which broadly empower TVA to design its own system of personnel management. Since the duty of fair representation arises by implication as a necessary corollary to the right of exclusive representation, the unions are subject to the same obligation toward non-union members of the employee unit as if they were bargaining under the Railway Labor Act or the National Labor Relations Act.

7. The defendants suggest instead that this case is governed by Tennessee's 90–day statute of limitations for an action to vacate an arbitration award, Tenn.Code Ann. § 29–5–313(b). *DelCostello* cautions against this suggestion, as the Court held in that case that it would be unreasonable to expect an unsophisticated employee to evaluate the adequacy of the union's representation in such a short period of time. 462 U.S. at 165–66, 103 S.Ct. at 2291–92. We therefore proceed on the assumption that Tennessee law, if applicable, would provide a three-year limitations period.

*Id.* at 1212.[8]

This court also has held that the TVA's duties are a matter of federal common law, and that those duties are analogous to the duties of private employers under the federal statutes:

> We recognize that TVA, as an agency of the United States, has been specifically exempted from the LMRA. Nonetheless, we can find no valid reason not to apply principles of arbitration law developed in the context of private labor disputes....
>
> ....
>
> ... It is well settled that federal law governs the validity and construction of contracts through which the United States exercises its constitutional functions. Private sector arbitration law dealing with labor disputes is a cohesive and well-developed body of law with which federal courts are well acquainted. The alternative to using existing principles is to develop a new body of law applicable to collective bargaining agreements involving government agencies. We see no reason to engage in such a development.

*Salary Policy Employee Panel v. Tennessee Valley Auth.,* 731 F.2d 325, 328–30 (6th Cir. 1984) (citation omitted) (*Salary Policy I*).[9] The court also noted that grievance provisions of the collective bargaining agreement at issue in that case, "like similar provisions in private sector agreements, serve the same basic function—to provide efficient procedures for resolving labor disputes." *Id.* at 330.[10]

Having determined that federal law governs both the actions for breach of the collective bargaining agreement and the ac-

---

**8.** The Eleventh Circuit has also determined that federal law governs the duties of a union whose members are employed by the TVA. While that court has not yet squarely held that the TVA Act creates a duty of fair representation, *see Hester v. International Union of Operating Eng'rs,* 830 F.2d 172, 174 (11th Cir.1987) (*Hester II*), *vacated,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989), it has held that the principles of the LMRA apply to an action against a TVA union for breach of a collective bargaining agreement. *See Hester v. International Union of Operating Eng'rs,* 941 F.2d 1574, 1580 (11th Cir.1991) (*Hester IV*).

**9.** The Eleventh Circuit agrees with our court on this point as well:

> Although the TVA Act itself contains no express language of preemption of this area, we believe that all state claims involving such collective bargaining agreements with the TVA are preempted by federal law.... Given the extensive federal regulation of labor-management relations, collective bargaining agreements in particular, and the fact that the TVA is a United States government corporation existing solely by virtue of federal law, we find that Congress has manifested an intent to supersede state law in this area....
>
> ....
>
> ... Indeed, any other conclusion would produce the absurd result that while federal law governs actions involving collective bargaining agreements of private sector employers, state law governs actions involving such agreements by a federal corporate employer, even though the latter obviously impacts more directly on federal interests.

*Hester IV,* 941 F.2d at 1582–83.

**10.** After this court's order in *Salary Policy I* that, under general principles of federal labor law, some of the disputes at issue in that case were to be submitted for arbitration, the parties entered into a revised agreement that specifically listed the kinds of disputes that were eligible for arbitration. The revised agreement also provided that "the unique foundations" of the relationship between the parties "shall be considered in interpreting this bilateral agreement rather than the principles developed for regulated labor relations agreements." IAM argues that, in refusing to submit a dispute to arbitration in *Salary Policy Employee Panel v. Tennessee Valley Auth.,* 868 F.2d 872 (6th Cir.1989) (*Salary Policy II*), this court relied on that language to foreclose application of the presumption of arbitrability under the LMRA. We do not consider that case relevant to the issues before us, for three reasons. First, the language relied on by IAM was dicta; the court refused to decide on an incomplete record whether such a presumption applies under the TVA Act, and instead relied on precedents developed under private labor law that a specific list of arbitrable disputes in an agreement trump any otherwise applicable presumption. *Id.* at 877. Second, *Salary Policy II* did nothing to disturb the notions that federal law governs the interpretation of TVA's collective bargaining agreements and that the interests of finality, efficiency, and fairness are the same with respect to the TVA's grievance procedures as with respect to private employers' procedures. Finally, although IAM refers us to similar language in the General Agreement and Framework Agreement between the TVA and the Council, there is no corresponding language in the Project Agreement at issue in this case, and not all of the parties to the Project Agreement were also signatories to the other two agreements. Therefore, *Salary Policy I* governs this case.

tion for breach of the duty of fair representation, we believe that it follows that the limitations periods established by federal law for labor law actions involving private employers are applicable to actions involving the TVA. IAM objects that the specific exemption of the TVA from the NLRA demonstrates that Congress intended that all labor relations actions involving the TVA should be subjected to state limitations periods. We consider this objection to be foreclosed both by precedent and by common sense. First, precedent: although the NLRA also excludes employers subject to the Railway Labor Act, *see* 29 U.S.C. § 152(2), in *West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), the Supreme Court spoke approvingly of the agreement between the parties in that case that actions under that Act are subject to the *DelCostello* limitations period. *See West,* 481 U.S. at 38 n. 2, 107 S.Ct. at 1541 n. 2. Our court has since relied on *West* to so hold. *See Ratkosky v. United Transp. Union,* 843 F.2d 869, 873 (6th Cir.1988). We are unable to discern a distinction between the exemption for Railway Labor Act employers and the exemption for the TVA that could lead to a different result. Second, common sense: given the pervasively federal nature of the rights and obligations of the TVA, its employees, and their unions, as well as the close similarity between the relevant interests in repose and in recovery in actions under the TVA Act and in actions under the NLRA or the LMRA, it would be illogical to attribute to Congress the intent that the limitations periods be treated differently.[11]

■ However, the fact that actions involving the TVA are analogous to actions involving private employers does not compel the conclusion that all such actions are subject to the *DelCostello* limitations period, for the Supreme Court has been careful to circumscribe the reach of that case even in cases involving private employers. For example, in *Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the plaintiff alleged that his union had violated his right to speak freely with regard to union matters, in violation of § 101(a)(2) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(2). The Court found the six-month limitations period prescribed by the NLRA to be inapplicable; unlike the hybrid action at issue in *DelCostello,* the LMRDA suit was more analogous to a § 1983 action to vindicate First Amendment rights than to an action challenging an unfair labor practice under the NLRA, and the interests in the stability of bargaining relationships and in the finality of arbitration procedures were only remotely implicated, if at all. *Reed,* 488 U.S. at 330–31, 109 S.Ct. at 628–29.

■ In light of *Reed* and *DelCostello,* we believe that this action easily fits within the range of labor cases that are subject to the NLRA's six-month limitations period. As we have already observed, this case would be controlled squarely by *DelCostello* if it had been brought against a private employer instead of the TVA. As in *DelCostello,* this case directly implicates the need for stability and finality in grievance and arbitration procedures. Therefore, because IAM's claims "bear[ ] a strong family resemblance to an unfair labor practices charge," and because this suit or a similar suit against the TVA may "require a plumbing of the entire union-management relationship over a period of many months," *Cummings v. John Morrell*

---

11. Of course, the search for Congressional intent may be somewhat artificial, as it is certainly possible that Congress's silence on this matter simply means that Congress did not consider it at all. While this realization cautions us to take care not to disrupt casually the presumption in favor of a state limitations period, we remain obligated to apply the analogous federal period if we conclude that Congress would have so intended, even in cases where Congress may not have explicitly created, or even contemplated, the cause of action. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 358, 111 S.Ct. 2773, 2779–80, 115 L.Ed.2d 321 (1991)

(federal limitations period applies to action under § 10(b) of the Securities Exchange Act of 1934, although such action is judicially created and most likely not foreseen by the enacting Congress); *DelCostello,* 462 U.S. at 158 n. 12, 103 S.Ct. at 2287 n. 12 (federal limitations period applies to judicially created federal common law cause of action for breach of duty of fair representation); *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 224, 78 S.Ct. 1201, 1203–04, 2 L.Ed.2d 1272 (1958) (federal limitations period applies to seaworthiness action under federal common law of admiralty).

& Co., 36 F.3d 499, 506 (6th Cir.1994) (six-month limitations period of NLRA applied to union's claim against employer for breach of collective bargaining agreement), we hold that IAM's claims are subject to a six-month statute of limitations.[12]

The Supreme Court's recent decision in *North Star Steel Co. v. Thomas,* —— U.S. ——, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995), does not require a different result. In that case, the Court rejected the application of the six-month NLRA limitations period to actions under the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2104(a)(5). The court reasoned that application of a state limitations period would not stymie the policies of the WARN statute. Since the plant closings covered by that statute occur at a "single site of employment," 29 U.S.C. § 2101(a)(3), they would not "commonly involve interstate transactions," and therefore the possibility of overlapping limitations periods was of no concern. *North Star Steel,* —— U.S. at ——, 115 S.Ct. at 1932, *quoting Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 153, 107 S.Ct. 2759, 2765–66, 97 L.Ed.2d 121 (1987). Furthermore, WARN is "so relatively simple and narrow in scope that no comparable practicalities of litigation compel us to search beyond state law for a more analogous statute of limitations." *North Star*

*Steel,* —— U.S. at ——, 115 S.Ct. at 1932 (internal quotation and citation omitted).

The causes of action in this case are not analogous to that available under WARN. While a suit under WARN almost always will involve an incident at a single plant in a single state, an action against the TVA such as the one at issue here may well implicate its relations with its employees in many or all of the seven states in which it operates. Also, while a suit under WARN almost always will involve a one-time incident, not to be repeated among the same parties—indeed, the very purpose of the plant closings against which the Act is directed is to sever the relationship between the employer and the affected employees—the actions at issue here involve a complex, delicate, and ongoing relationship which may be disrupted by an untimely suit. *DelCostello,* and not *North Star Steel,* therefore, controls this case.[13]

### B. When the Statute of Limitations Runs

■ Having determined that IAM's breach of collective bargaining agreement and breach of the duty of fair representation claims are subject to a six-month limitations period, we must determine when that period began to run against IAM. As with the former inquiry, we consider our precedents developed in private labor law cases to be

12. Prior to *Reed,* the Eleventh Circuit had held that the *DelCostello* limitations period applied to a TVA employee's suit against his union for improper disciplinary actions under the LMRDA, 29 U.S.C. § 411(a)(5), and for breach of the duty of fair representation. *Hester v. International Union of Operating Eng'rs,* 818 F.2d 1537, 1548 (11th Cir.1987) (*Hester I*). Upon rehearing, the court ordered the dismissal of the latter claim for failure to state facts that would support a cause of action. *Hester II,* 830 F.2d at 174. In light of *Reed,* the Supreme Court vacated the orders and remanded the case to the Eleventh Circuit for reconsideration. 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989). On remand, the court had only the former claim before it, and it opted to apply the one-year Alabama limitations period for personal injury actions, reasoning that the policies underlying the LMRDA claim before it were substantially the same as those underlying the LMRDA claim in *Reed. Hester v International Union of Operating Eng'rs,* 878 F.2d 1309, 1310 (11th Cir.1989) (*Hester III*), *cert. denied,* 494 U.S. 1079, 110 S.Ct. 1808, 108 L.Ed.2d 939

(1990). Thus, although its holding to this effect has been vacated, we read the *Hester* cases to mean that the Eleventh Circuit would hold again that the *DelCostello* limitations period would apply to a hybrid breach of collective bargaining agreement/breach of duty of fair representation action involving the TVA.

13. As an alternative ground to reach the same result, the defendants note that IAM's suit is in substance one against the TVA's contractors and not against the TVA. The defendants note further that the NLRB recently has held that all otherwise eligible contractors of exempt employers are covered by the NLRA, reversing its prior position. *See Management Training Corp.,* 317 N.L.R.B. 1355, 1995 WL 451936 (1995), *overruling Res–Care, Inc.,* 280 N.L.R.B. 670, 1986 WL 53982 (1986). The defendants asks us to rule that *Management Training* applies retroactively, and therefore to hold that the NLRA limitations period applies of its own force. Given our holding on other grounds that that period is applicable, we do not reach this issue.

applicable here. "[F]or purposes of a hybrid § 301/unfair representation action, the statute of limitations begins to run when the claimant knows or should have known of the union's alleged breach of its duty of fair representation." *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221 (6th Cir.1995). More specifically, "the employee's hybrid cause of action may arise when the union takes an unequivocal position that it will not seek arbitration." *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir.1987). The defendants argue that such an unequivocal position was taken no later than October 2, 1992, when the JAC, for the fourth time, refused to submit an IAM grievance to arbitration. IAM argues instead that the statute did not begin to run until November 2, 1993, when the JAC denied its final grievance. The former position is correct. IAM's brought its fourth grievance against twenty-nine contractors; the other grievances were each brought against only one contractor. IAM based each grievance on the same factual predicates and on the same interpretation of the language of the Project Agreement. The JAC's rejections of both the merits of the grievances and the requests for arbitration were also based on identical reasoning. Therefore, IAM objectively should have known as of October 2, 1992, at the latest, that the JAC's position was unequivocal. The statute began to run on that date; IAM brought its claims more than six months after that date; those claims are barred.

### III. Inducement of Breach of Contract Claims

 IAM argues that its claims against the TVA and the BCTD survive, because they arise solely under state law and therefore are not subject to a federal limitations period. This argument is mistaken, for the claims are preempted by federal law, and therefore are subject to the same limitations period as are the claims discussed above. Our precedents teach that federal labor law preempts only the narrow band of state law claims whose elements require an interpretation of a collective bargaining agreement;

because the policies motivating the labor laws could be stymied by differing interpretations of the same agreement, federal law supplants such state law claims. "Section 301 preempts only state law claims that are substantially dependent on analysis of a collective-bargaining agreement.... [T]ortious interference with contractual relations claims are preempted if, but only if, breach of contract is an essential element of such a state law claim." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799–800 (6th Cir.1990) (internal quotation omitted). The Supreme Court has cautioned that, while a state law claim is preempted if its resolution "depends upon the meaning of a collective bargaining agreement," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988), such a claim would not be preempted if it only involved the same facts as the federal claim. *Id.* at 409–10, 108 S.Ct. at 1883–84. IAM's inducement of breach claims fall into the former category; under Tennessee law, one element of such a claim, logically enough, is that the contract in fact was breached. *See TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.Ct.App. 1987). Therefore, the claims arise under federal law, not state law, and are subject to the same limitations period as the primary claims considered above. *See Fox*, 914 F.2d at 803.[14] The limitations period also began to run for the inducement of breach claims no later than October 2, 1992; therefore, they are time barred as well.

### IV. The Request for Declaratory Relief

 Finally, IAM argues that if it is barred by the statute of limitations from gaining substantive relief on its claims, it may still obtain a declaratory judgment. It argues that the Project Agreement is still in force, that the parties have continuing rights and obligations under the agreement, and that a judicial interpretation of the agreement would affect those rights and obligations. In so arguing, IAM has confused the requirement that it must have standing to pursue declaratory relief with the requirement that it must not have a claim that has

---

14. We do not here undertake to define the scope of the tort of inducement of breach in labor law

actions involving the TVA, nor do we decide whether such a tort exists under federal law.

been made stale by the statute of limitations. A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred. "Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred." *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *see also Luckenbach S.S. Co. v. United States,* 312 F.2d 545, 548 (2d Cir.1963). A contrary rule would allow a plaintiff to "mak[e] a mockery of the statute of limitations by the simple expedient of creative labelling." *Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991). IAM may not pursue a request for declaratory relief.[15]

## V. Conclusion

Each of IAM's claims is foreclosed by the statute of limitations. Therefore, the judgment of the district court dismissing IAM's complaint in its entirety is AFFIRMED.

---

**15.** The defendants have also argued that IAM's complaint should be dismissed for failure to name indispensable parties—to wit, the contractors—under Fed.R.Civ.P. 19(c). Our disposition above renders it unnecessary to reach this issue.