NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0492n.06

Nos. 09-3402 and 09-3403

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 11, 2010**
LEONARD GREEN, Clerk

KYLE LAUKUS,                                )
                                            )
      **Plaintiff-Appellant,**        )          **ON APPEAL** FROM THE
                                            )          UNITED STATES DISTRICT
v.                                          )          C O U R T   F O R   T H E
                                            )          NORTHERN DISTRICT OF
                                            )          OHIO
RIO BRANDS, INC.; a.k.a. ALL-LUMINUM, INC.; )
WAL-MART STORES, INC.; SAM'S CLUB; BJ'S     )          **O P I N I O N**
WHOLESALE CLUB, INC.; LOWE'S HOME           )
CENTERS, INC.,                              )
                                            )
      **Defendants-Appellees.**       )

BEFORE: NORRIS, COOK, and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Plaintiff Kyle Laukus ("Laukus") filed a complaint

against defendants Rio Brands, Inc. ("Rio"); Wal-Mart Stores, Inc., and Sam's Club (collectively,

"Wal-Mart"); B.J.'s Wholesale Club, Inc. ("B.J.'s"); and Lowe's Home Centers, Inc. ("Lowe's").

Laukus asserted federal claims of trademark infringement and trademark counterfeiting, as well as

state-law claims for unfair competition, common law trademark infringement, and unjust

enrichment. Laukus sought both monetary damages and injunctive relief.

In separate orders, dated September 24, 2008 and January 14, 2009, the district court granted

partial summary judgment to defendants. The orders disposed of all but three of Laukus's claims.

The district court denied summary judgment on the claims for federal trademark infringement,

common law trademark infringement, and state unfair competition to the extent that they sought injunctive relief. Thereafter, defendants, without admitting liability, stipulated to the entry of an injunction against their use of the disputed mark.[1] Concluding that no issue remained for trial, the district court entered final judgment. This appeal followed. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

Laukus operates a business that sells and installs flags and flag poles under the name "American Pride" in Benton Harbor, Michigan. Laukus owns a registration on the Principal Register of the United States Patent and Trademark Office ("USPTO") for the service mark "American Pride" for use in connection with "retail store services in the field of flags, flag poles, pennants and streamers, in class 42 (U.S. C.L. 101)." Although he does not own a separate "American Pride" trademark registration for the flags and flag-related goods sold in such retail stores, he uses the mark on the flag products sold from his retail store.

Rio is a manufacturer of various outdoor products, including patio furniture, flags, and flag-related products. Sometime in the spring of 2003, Rio ceased selling its flag products under the name "Rio Outdoor Living" and started using the name "American Pride" instead. Rio claims that at the time it adopted "American Pride" for its flag products, it was not aware of Laukus's service mark registration.

---

[1]Defendants also stipulated to the dismissal of their counterclaims for cancellation of Laukus's trademark. That issue is not on appeal.

Later that year, Rio submitted a trademark application to the USPTO for "American Pride"

for "[w]all mounted flag holders, rail mounted flag holders, flag poles, flags and banners."  The

USPTO refused the application based upon the likelihood of confusion with Laukus's registered

mark for retail store services.  Rio filed a response to the refusal notice.  The USPTO then sent a

Notice of Suspension to Rio, continuing its refusal of Rio's trademark application and stating, in

pertinent part:

> The applicant primarily argues that the goods/services are unrelated.
>
> The goods/services of the parties need not be identical or directly competitive to find a likelihood of confusion.  They need only be related in some manner, or the conditions surrounding their marketing be such, [sic] that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods/services come from a common source.
> . . .
>
> . . . .
>
> On the basis of the facts that the mark is identical and the goods/services are related, the likelihood of confusion exists.

Despite receiving two refusals from the USPTO to register the mark "American Pride" for

its flags and flag-related products, Rio took the position that its use of the mark for goods did not

infringe upon Laukus's registered mark for retail store services.  Rio therefore continued to sell its

flag-related goods under the mark "American Pride."  Among those who purchased Rio's goods to

sell at retail were the chain stores Wal-Mart, B.J.'s, and Lowe's.[2]

---

[2]Laukus voluntarily dismissed Lowe's as a party to this action on November 8, 2007.

Upon discovering that Rio was using the "American Pride" mark in connection with its marketing and sales of flag products, and that at least one retail store, Lowe's, was selling those products under the "American Pride" name, Laukus's attorney sent Rio's counsel a "cease and desist" letter on February 28, 2005. Rio's counsel responded on March 11, 2005, refusing to cease and desist use of the mark and rejecting Laukus's claim that he had a proprietary right to use the mark in connection with flag-related goods.[3]

According to his affidavits, Laukus, he was prepared to file suit in the fall of 2006 but, after conducting on-site investigations of several retail stores in Ohio, Michigan, and Indiana and discovering no flag products being sold under the name "American Pride," he concluded that Rio had in fact ceased using the "American Pride" name for its flag products, thereby making a lawsuit unnecessary. In late May or early June 2007, however, Laukus learned that one or more retailers were selling flags (that he had not manufactured) under the name "American Pride."

On July 31, 2007, Laukus filed this action. In his second amended complaint, Laukus asserted five claims for relief: (1) federal trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) common law trademark infringement; (3) federal trademark counterfeiting under § 32 of the Lanham Act, 15 U.S.C. § 1114; (4) unjust enrichment; and (5) unfair competition under Ohio Revised Code § 4165.02, et seq. Laukus contended that numerous customers who bought Rio's flags under the "American Pride" mark discovered those products to be faulty and contacted Laukus by e-mail or telephone after ascertaining his contact

---

[3]The record contains no evidence that any of the retailers eventually made parties to this action received a copy of the "cease and desist" letter.

information through his website, www.americanprideflags.com, to request that his company repair the allegedly defective and inferior flag products. Laukus claimed that these customers mistakenly believed that the "American Pride" products they had bought were manufactured by Laukus, when in fact Rio was the manufacturer. In addition to monetary damages, Laukus sought injunctive relief and attorneys' fees.

In an order granting in part defendants' first motion for summary judgment, the district court dismissed on the merits Laukus's claim for trademark counterfeiting (Count III) and dismissed as barred by laches his claim for unjust enrichment (Count IV) in its entirety. In the same order, the district court also dismissed as barred by laches Laukus's federal trademark infringement claim and his state trademark infringement and unfair competition claims (Counts I, II, and V) insofar as those claims sought damages for past infringement. In a separate order granting in part defendants' second summary judgment motion, the district court determined that Laukus was not entitled to recover any monetary damages–specifically actual damages or disgorgement of profits attributable to infringement–on his trademark infringement and unfair competition claims. After these rulings, the only issue left for trial was whether Laukus was entitled to injunctive relief on his trademark and unfair competition claims.

Rather than proceed to trial, defendants entered a stipulation in which they, without admitting liability or wrongdoing, agreed to the entry of an injunction against Rio's use of the "American Pride" mark for its flags and flag-related products. In light of defendants' stipulation and the court's previous determination that Laukus was not entitled to monetary damages, the district court concluded that Laukus was without further remedy for his trademark infringement and unfair

competition claims. Thus, the district court deemed as moot the question of whether defendants were in fact liable for trademark infringement and unfair competition and, accordingly, dismissed Laukus' complaint.

On appeal, Laukus raises three issues for review: (1) whether the district court erred in finding that defendants were entitled to benefit from the affirmative defense of laches; (2) whether the district court erred in dismissing the federal trademark counterfeiting claim on the merits; and (3) whether the district court erred in precluding Laukus from seeking an award of profits under his trademark infringement claims.

## II.

We review *de novo* a district court's grant of summary judgment. *Sigley v. City of Parma Heights*, 437 F.3d 527, 532 (6th Cir. 2006); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To overcome a motion for summary judgment, the non-moving party must point out specific facts in the record that show more than a scintilla of evidence of the existence of a genuine issue of material fact. *Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006).

*A. Claims Dismissed as Barred by Laches for Past Infringement and for Failing to Show Monetary Damages*

In dismissing Laukus's claims for federal trademark infringement (Count I), common law trademark infringement (Count II), and Ohio unfair competition (Count V), the district court

determined in its September 24, 2008 order that Laukus's delay in bringing suit barred those claims–to the extent that they sought actual damages for past infringement– under the equitable doctrine of laches. The district court later held that Laukus was not entitled to an award of defendants' profits attributable to the infringing conduct, in part because of his delay in asserting his rights. Thus, the district court found that laches barred those claims insofar as Laukus sought monetary relief. Similarly, the district court dismissed in its entirety Laukus's claim for unjust enrichment (Count IV) based upon its determination that laches barred that claim.

On appeal, Laukus contends that the district court impermissibly weighed the evidence and improperly construed it against Laukus in determining whether the presumption of laches applied to this action in the first place, and then, having concluded that it did, in determining whether Laukus rebutted the presumption. We agree in part. Although the district court committed no error in finding that the presumption of laches applied to this action, it improperly weighed the evidence in finding that Laukus failed to rebut the presumption.

Claims arising out of alleged trademark infringement may be barred by laches where the party alleging infringement has negligently and unintentionally failed to protect its rights. *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). "Unlike statutes of limitations, 'laches is not . . . a mere matter of time[,] but principally a question of the inequity of permitting the claim to be enforced.' " *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).

To benefit from the defense of laches, the party asserting it must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.

*Nartron*, 305 F.3d at 408. In this circuit, a plaintiff's delay in initiating a claim based upon trademark infringement is subject to a strong presumption of reasonableness as long as the analogous state statute of limitations has not elapsed. *Id.* However, when a plaintiff files suit outside that period, a rebuttable presumption arises that the delay was unreasonable and prejudicial to the defendant. *Id.*

        1. *Application of Laches*

The district court concluded that laches applied to this action because Laukus brought his claims outside the statutory period, rendering them presumptively unreasonable and prejudicial. To determine whether a plaintiff's delay in bringing a trademark claim gives rise to the application of laches, courts in this circuit look to the state-law statute of limitations for injury to personal property. *Id.* at 408. The general rule is that where Congress has not provided a statute of limitations, the trial court should borrow the statute of limitations from the forum state that provides the closest analogy to the federal cause of action. *International Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 661 (6th Cir. 1997). Here, the forum state is Ohio and the relevant statute of limitation is two years. *See* Ohio Rev. Code § 2305.10(A) ("[A]n action for . . . injuring personal property shall be brought within two years after the cause accrues."). The period of delay begins to run when plaintiff had "actual or constructive knowledge of the alleged infringing activity." *Nartron Corp.*, 305 F.3d at 408 (quoting *Dana Corp. v. IPC Ltd. Partnership*, 674 F.Supp. 581, 583 (E.D. Mich. 1987)). Thus, in this action, the period of delay began to run no later than February 28, 2005, the date of the "cease and desist" letter Laukus's counsel sent to Rio because, as of that date, Laukus had actual knowledge of the alleged infringing activity. Accordingly, under the analogous

Ohio statute of limitations, Laukus was required to file suit by February 27, 2007. However, he waited until July 31, 2007–approximately five months after the statute of limitations had run. We therefore agree with the district court's conclusion that Laukus's delay was presumptively unreasonable and prejudicial to defendants.

In reaching this conclusion, we reject Laukus's contention that Rio was not entitled to raise the laches defense under the doctrine of unclean hands because Rio engaged in egregious conduct by using similar trade dress for its products, including using the "®" symbol for the "American Pride" mark that it did not own, and by continuing to use the mark after its application for the mark was twice denied by the USPTO based upon likely confusion with Laukus's service mark. This court has previously noted that "refusal by the United States Patent Office to register a mark is not of itself evidence of bad faith." *Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752, 755 (6th Cir. 1986). And, quoting from an opinion from the Second Circuit, we further observed that merely because "'the Patent Office had refused the defendants' application for registration[,] . . . it did not follow that the defendants could not have honestly believed that on a weighing of all the relative and variable pertinent factors a court of competent jurisdiction would not permit them to use the trademark.'" *Id.* (quoting *Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 308 F.2d 196, 199 (2d Cir. 1962)). Here, Rio has consistently taken the position that its use of the "American Pride" mark for flags and flag-related goods did not infringe upon Laukus's registered mark "American Pride" for retail store services in the field of flags, flag poles, pennants and streamers because the use of a mark for goods is distinct from the use of a mark for services. In addition, the record is devoid of evidence that Rio knew of Laukus' registration when it adopted the "American Pride"

mark or that it continued to use the "®" symbol next to the mark after receiving the application denials from the USPTO.

### 2. *Rebuttal of the Presumption of Laches*

Having determined that defendants successfully established a presumption of unreasonable delay and material prejudice, we now consider whether Laukus presented sufficient rebuttal evidence to defeat defendants' motion for summary judgment. A party against whom laches is asserted based upon a delay beyond the statutory period may defeat the defense by "(1) rebu[ting] the presumption of prejudice; (2) establish[ing] that there was a good excuse for its delay; or (3) show[ing] that the defendant engaged in 'particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Nartron*, 305 F.3d at 409 (quoting *Dana Corp.*, 647 F.Supp. at 583).

As noted above, Laukus has not provided evidence of egregious conduct by defendants with respect to use of the protected mark. Thus, to defeat the laches defense, he must establish good cause for delay or lack of material prejudice to defendants.

As a threshold matter, we note that "the essence of the defense of laches is prejudice to a defendant through unconscionable delay by a plaintiff in the assertion of his claim." *Ute Indian Tribe of Uintah v. Probst,* 428 F.2d 491, 496 (10th Cir. 1970) (citing *Costello v. United States*, 365 U.S. 265, 282 (1961)). Underpinning the bar to relief based upon such delays is the policy that "[t]he lapse of time carries with it the memory and life of witnesses, the muniments of evidence, and other means of proof." *Brown v. County of Buena Vista*, 95 U.S. 157, 161 (1877). Guided by this policy, in the context of trademark infringement actions, we have observed that "[a] reasonable businessman should be afforded some latitude to assess both the impact of another's use of an allegedly infringing

trademark [and] the wisdom of pursuing litigation on the issue." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir. 1985). Moreover, absent significant material prejudice to a defendant, courts are generally hesitant to conclude that trademark infringement claims are barred by laches for such a short period as presented here. *Compare* McCarthy on Trademarks and Unfair Competition, § 31:29 (collecting cases holding time delays of between three months and thirteen years not sufficient for laches defense) *with* McCarthy on Trademarks and Unfair Competition, § 31:30 (collecting cases holding time delays of between three years and sixty-nine years sufficient for laches defense). This is particularly true where the defendant was put on notice of the allegedly infringing conduct. *See Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965) ("It is only . . . where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time that the balance of equities would favor the knowing infringer.")

In this action, Laukus provided sworn affidavits stating that he did not file suit within the statutory period because, in an effort to confirm that his infringement claims remained viable, he and others on his behalf conducted visual inspections of retail stores in Michigan and Ohio that had previously carried the allegedly infringing products. His affidavit stated that, as a result of those inspections, he believed the infringement had ceased. At the summary judgment stage, the district court was required to view this evidence in the light most favorable to Laukus as the non-moving party, and to draw all reasonable inferences in his favor.

In order for the district court to reach its conclusion that the roughly two-and-a-half-year delay in bringing suit warranted the application of laches, one must conclude that it impermissibly

weighed the evidence in order to find that Laukus did not have a good reason for filing suit five months after the statutory limitations period and that his evidence did not show the absence of prejudice to defendants. In addition, the district court neglected to view the evidence and all reasonable inferences derived therefrom in the light most favorable to Laukus. For example, although the district court concluded that the retail defendants sold Rio's flag products year-round, it nevertheless determined that no reasonable person could find that Laukus reasonably believed Rio had ceased its alleged infringement because his visual inspections of the retail stores–which were made within the two-year statutory period and which yielded no evidence of continued infringement–occurred during the "off-season" for flag sales. The district court reached this conclusion notwithstanding the fact that Laukus first discovered the infringing products during a period that fell within what the court deemed the off-season. Moreover, whether a "flag-selling season" even exists and when it occurs is itself a factual determination beyond the scope of summary judgment.

In a similar vein, the district court identified several questions left unanswered by the affidavits that Laukus and his counsel submitted concerning the methods and thoroughness with which the inspections were undertaken. For example, the district court questioned whether Laukus and his acquaintances inspected every aisle or merely "enter[ed] the front of each store and [took] a quick look around," and whether they asked a sales associate if the store carried Rio's flags. Those questions invaded the province of the factfinder in weighing the evidence to determine the reasonableness of Laukus's decision to delay filing suit.

Finally, had Laukus initiated this action in Michigan (his state of residence and the place of harm), his claims would have fallen well within that state's three-year statute of limitations, and he would have enjoyed a strong presumption of reasonableness in delaying suit. *See Mich. Comp. Laws* § 600.5805(10). We observe that, as the owner of a Michigan-based business, Laukus could reasonably have relied on the longer statutory period in calculating how long he could wait before asserting his claims in a court of law. The district court neglected to recognize this inference in Laukus's favor.

Because genuine issues of material fact exist regarding whether Laukus had good cause for his delay in bringing suit, the district court erred in ruling otherwise.

### 3. *Award of Profits*

After its September 24, 2008 order concluded that laches barred Laukus's trademark infringement and unfair competition claims to the extent they sought damages for past infringement, the district court then determined in its January 14, 2009 order that Laukus failed to offer sufficient evidence warranting statutory damages for disgorgement of defendants' profits attributable to past use of the protected mark.[4] Laukus claims the district court erred by requiring a showing of wilfulness, contrary to the law of this circuit. He also contends that, to the extent wilfulness is a proper consideration, he presented evidence creating a genuine issue of material fact that the district court erroneously disregarded in ruling in favor of defendants.

---

[4]The January 14, 2009 order also found that Laukus failed to offer any evidence of actual damages. Laukus does not appeal that aspect of the district court's judgment.

A prevailing plaintiff in a trademark infringement case may, under certain circumstances, recover a defendant's profits subject to the principles of equity. 15 U.S.C. § 1117(a). In the trademark infringement context, we have previously recognized that an award of profits may be warranted under various rationales, such as unjust enrichment, deterrence, and compensation. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606-07 (6th Cir. 1991); s*ee also Basketball Mktg. Co., Inc. v. Upscale Entm't and Mktg. Group*, 227 F. App'x 492, 493 (6th Cir. 2007) (citing *Wynn Oil* and reaffirming that, after the amendments to Lanham Act in 1999, a showing of willful infringement is not required for equities to weigh in favor of an award of profits). Although showing willfulness is not required, willfulness is one element that courts may consider in weighing the equities. *See Gucci America, Inc. v. Daffy's, Inc.*, 354 F.3d 228, 241 (3d Cir. 2003); *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2003).

In weighing the equities in this action, the district court looked to the six factors identified by the Fifth Circuit in *Quick Technologies*: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Quick Techs.*, 313 F.3d at 348-49. The district court found that defendants had no intent to confuse or deceive, that the record contained no evidence of diverted sales, and that Laukus had not shown that an injunction would be inadequate to protect his rights. It also found, as discussed in detail above, that Laukus unreasonably delayed in asserting his rights. The district court made no finding concerning the public's interest in making the misconduct unprofitable. Based upon these findings, it concluded

that the equitable considerations at play did not support a finding that Laukus was entitled to recover defendants' profits.

Contrary to Laukus's assertion, the district court did not require a showing of willfulness. Rather, the court appropriately considered that element among other factors it deemed relevant to the weighing of the equities in this action. Moreover, the district court did not err in considering willfulness as a relevant factor, nor did it err in looking to the factors identified by the Fifth Circuit in *Quick Technologies*. We agree with Laukus, however, that he produced sufficient evidence to create a genuine issue of material fact with respect to whether Rio intended to confuse or deceive, given Rio's continued use of the "American Pride" mark after receiving notice from the USPTO that Laukus had a protected right to that mark and that Rio's use of the mark was likely to cause confusion among customers.

In addition, as discussed above, since Laukus created a genuine issue of material fact concerning the reasonableness of his delay in filing suit, the district court erred in weighing Laukus's delay against him in balancing the equities on his trademark counterfeiting claim.

Finally, the district court improperly placed the burden on Laukus to show lost profits attributable to past infringement. The United States Supreme Court has made clear that "[t]he burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark*." Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942).

        *B.  Claim Dismissed on the Merits*

The district court summarily dismissed Laukus's trademark counterfeit claim (Count III) based upon its conclusion that the alleged misuse of Laukus's registered mark was for goods (flag-pole kits) unrelated to the purpose for which his mark was issued (retail store services in the field of flags, flag poles, pennants, and streamers).  According to the district court, the plain language of the Lanham Act defining "counterfeit mark," *see* 15 U.S.C. § 1116, and the distinction between goods and services operate to defeat Laukus's trademark counterfeiting claim.

The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services [where] such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a). To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. 15 U.S.C. § 1117(b).  Section 1116 defines "counterfeit mark" as a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."  15 U.S.C. § 1116(d)(1)(B)(i).  Elsewhere, the statute provides additional clarification, defining "counterfeit" as a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

In the present action, the district court dismissed Laukus's trademark counterfeiting claim because it concluded that defendants used the mark for purposes unrelated to Laukus's protected

registration in that Laukus used the protected mark in connection with services whereas Rio used it in connection with goods. None of the authority cited by the district court or the parties, however, addresses the question of whether the distinction between goods and services precludes an action for trademark counterfeiting where, as here, the protected mark is registered for services and the allegedly counterfeit mark is used on or in connection with goods.

For purposes of a counterfeiting claim, the statute in no way distinguishes registered marks for services from registered marks for goods. The use of a counterfeit of either type of registered mark, whether in connection with the sale of goods or in connection with the sale of services, is actionable under the circumstances described by the statute.

In view of the plain language of the statute, we conclude that the district court erred in determining that defendants' alleged misuse of the mark was unrelated to the purpose for which Laukus's service mark was issued merely because defendants used the "American Pride" mark in connection with the sale of flag-pole kits, not in connection with retail store services. Laukus has a registered mark for "retail store services in the field of flag, flag poles, pennants, and streamers," and he has used that mark both to identify his retail store and to designate the source of his flag products. Rio used an identical mark on its flag products, which the retailers then sold at retail. Because defendants used Laukus's protected service mark– which mark he registered for "retail store services in the field of flag, flag poles, pennants, and streamers"–in connection with the sale of its flag products, we conclude that Laukus has made a prima facie counterfeit trademark claim.

- 17 -

**III.**

The judgment of the district court is **affirmed in part** and **reversed in part** and the cause

**remanded** for further proceedings consistent with this opinion