**M2 SOFTWARE INC., a corporation, Plaintiff—Appellant,**

v.

**VIACOM INC., a corporation, et al., Defendants—Appellees.**

No. 00–56426.

D.C. No. CV–98–08734–RAP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Decided Jan. 30, 2002.

Before PREGERSON, REINHARDT, and SILVERMAN, Circuit Judges.

MEMORANDUM *

M2 Software appeals the district court's grant of summary judgment in favor of Viacom. Because the facts are known to the parties, we will not recite them in detail except as necessary. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

To prevail on its claim of trademark infringement in violation of the Lanham

Act, M2 Software must show (1) that it has a valid mark entitled to protection under the Act, and (2) that Viacom's mark creates a likelihood of confusion. *See Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir.1999). The district court concluded that M2 Software had a valid trademark in its Record Label Management System ("RLMS"), but that Viacom's "M2: Music Television" cable channel did not create a likelihood of confusion. *See M2 Software, Inc. v. Viacom, Inc.*, 119 F.Supp.2d 1061 (2000).

We review de novo the district court's grant of summary judgment. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir.1999), *cert. denied*, 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1073 (2000). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *See id.* (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n. 5 (9th Cir. 1985)).

■ M2 Software contends that it had a valid M2 trademark not only on the RLMS product, but also on several CD-ROMs it created between 1991 and 1997, including the BPC Interactive, Hijack Interactive, and Killer Grabbag of Shards. We agree. M2 Software registered the M2 trademark on the federal register for computer software including "interactive multimedia applications for entertainment, education and information, in the nature of artists' performances and the biographical information from the film and music industries." U.S. Trademark No. 1,931,182 (registered Oct. 31, 1995). Federal registration of a trademark is prima facie evidence of the validity of the registered

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

mark for the goods or services specified. Lanham Act § 7(b), 15 U.S.C. § 1057(b). The CD–ROMs fall squarely within the terms of the registration, and Viacom does not argue that the registration was invalid in any way or that M2 Software had canceled or abandoned the mark.

Moreover, M2 Software is the indisputable senior user of the M2 mark based upon the introduction of its RLMS product in 1991, and the senior user "has the right to enjoin 'junior' users from using confusingly similar marks in the same industry or market or within the senior user's natural zone of expansion." *Brookfield Communications,* 174 F.3d at 1047. Accordingly, we conclude that M2 Software had valid trademark rights in the M2 mark that extended to its CD–ROM products.

M2 Software argues that Viacom's use of the M2 mark created a likelihood of confusion. Specifically, M2 Software alleges that the use of the mark created a likelihood of reverse confusion, which occurs when consumers doing business with the senior user mistakenly believe that they are dealing with the junior user. *See Dreamwerks Prod. Group Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998). In determining whether there is a likelihood of confusion, the following factors are relevant: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, (8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979). In a reverse confusion case, such as this one, the first three factors are "pivotal." *Dreamwerks,* 142 F.3d at 1130. "[I]n a close case amounting to a tie, doubts are resolved in favor of the senior user," which is M2 Software. *Dr. Seuss Enterprises, L.P. v. Penguin Books*

*USA, Inc.,* 109 F.3d 1394, 1404 n. 14 (9th Cir.1997).

■ We conclude that M2 Software has brought forth sufficient evidence that "would permit a rational factfinder to find a likelihood of confusion." *Interstellar Starship Servs., Ltd.,* 184 F.3d at 1112. The evidence, viewed in the light most favorable to M2 Software, *see id.* at 1109, supports an inference that Viacom's M2: Music Television and use of the M2 mark in connection with Intel's Intercast Technology created a likelihood of confusion with M2 Software's music-industry products.

REVERSED and REMANDED for trial.

PREGERSON, Circuit Judge, Dissenting.

I disagree with the majority as to whether M2 Software's M2 trademark extends to its CD–ROM products. I think that Judge Paez, who handled the case in the district court, got it right when he concluded that M2 Software's trademark ownership should be analyzed in connection with its CD–ROM products at the time when the CD–ROM products were first used in commerce, and not when M2 Software first acquired its rights in the M2 mark through its use on prior products. Accordingly, I respectfully dissent because I think the CD–ROM products should not have been included in the likelihood of confusion analysis as they were not used in commerce before Viacom used its mark.