M2 SOFTWARE INC., a corporation, Plaintiff—Appellant,

v.

VIACOM INC., a corporation; Viacom International Inc., a corporation; MTV Networks Company, a corporation, Defendants—Appellees.

No. 04–56794.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 2006.

Filed Feb. 28, 2007.

J. Stan Sexton, Kirk J. Goza, Esq., Shook Hardy & Bacon, LLP, Kansas City, MO, for Plaintiff–Appellant.

Larry W. McFarland, David K. Caplan, Anthony M. Keats, Keats, McFarland & Wilson, Beverly Hills, CA, for Defendants–Appellees.

Before: GIBSON *, FISHER and CALLAHAN, Circuit Judges.

### MEMORANDUM **

M2 Software, Inc., appeals the entry of summary judgment and a limited permanent injunction with regard to its reverse confusion trademark infringement claim

against Viacom, Inc., Viacom International, Inc., and MTV Networks Company (Viacom). We remand only for clarification of the permanent injunction's scope and, if necessary, for trial on that issue.

### M2   Software's Claim

In light of our previous ruling in this case, M2 Software has only one remaining federal trademark claim under 15 U.S.C. § 1114; it has waived any claim under 15 U.S.C. § 1125. *See M2 Software, Inc. v. Viacom, Inc.*, 30 Fed.Appx. 710 (9th Cir. 2002). Even had we not already issued an order clarifying that we previously "reversed the grant of summary judgment only on M2 Software's federal trademark infringement claim" because "[n]o other claims were specifically and distinctly argued in M2 Software's opening brief, and thus any other claims were waived," M2 Software again fails to argue this issue "specifically and distinctly" during this appeal. *See Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir.1986). Accordingly, we consider only M2 Software's claims under § 1114.

### Damages

█ 1. No reasonable factfinder could conclude that M2 Software was entitled to any actual damages. "The ultimate question in a reverse confusion case is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 897 (9th Cir.2004) (internal quotation omitted). This question focuses on "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the *origin* of the good or service bearing one of the marks." *Id.* (emphasis added) (in-

---

* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

ternal quotation omitted). M2 Software has not produced any evidence of confusion between its mark and Viacom's mark, but rather only evidence as to confusion as to who was the rightful trademark owner.

■ 2. M2 Software is not entitled to an accounting of Viacom's profits, because it did not introduce evidence from which a reasonable factfinder could conclude that Viacom willfully infringed M2 Software's trademark. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir.1993) (refusing to order an accounting of profits where "infringement was innocent"); *see also Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.2000).

Even if there was a meeting between an M2 Software employee and a Viacom Vice–President of International Programming at a trade show in 1992, that is insufficient to show that Viacom was aware of M2 Software's use of an M2 mark. There is no evidence that the Viacom vice-president was involved in any way with M2: MUSIC TELEVISION six years later. M2 Software's contention that Viacom had knowledge of its mark through Mark Farber, a general manager of M2: MUSIC TELEVISION who used to work at Arista Records, which is a client of M2 Software, is equally unsubstantial. It is undisputed that Farber left Arista over six months before M2 Software ever used its mark, and over five years before M2 Software entered into any agreement with Arista.

Viacom's communications with the Patent and Trademark Office do not prove willful infringement. M2 Software argues that Viacom did not disclose its anticipated use of an M2–related mark, but it concedes that Viacom applied to the PTO to register its own M2 trademark before launching the "M2: MUSIC TELEVISION" channel. Finally, there is no evidence that Viacom misrepresented or omitted reference to its interactive services in its communications with M2 Software, but merely that it believed them wholly distinct from M2 Software's programs. In sum, there is no evidence upon which a reasonable factfinder could base a finding of willful infringement, and M2 Software is not entitled to an accounting of any Viacom profits from the alleged infringement.

3. Because M2's only proposed methodology for estimating a reasonable royalty hinges on an accounting of Viacom's profits, its theory that it may impute royalties as a way of disgorging Viacom's allegedly unjustly acquired profits likewise fails. Therefore we need not decide more generally whether reasonable royalties can be a measure of a plaintiff's damages in a trademark case, as other circuits have found appropriate in some cases. *See, e.g., Sands, Taylor & Wood Co. v. Quaker Oats Co. (Sands I)*, 978 F.2d 947 (7th Cir.1992) (approving use of a reasonable royalty as compensation for reverse confusion trademark infringement where the senior user had negotiated a license with someone other than the plaintiff); *Boston Prof'l Hockey Ass'n, v. Dallas Cap & Emblem Mfg.*, 597 F.2d 71, 76 (5th Cir.1979) (basing a reasonable royalty rate on prior negotiations between the parties). In the absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty here would be impermissibly speculative. *See Lindy Pen Co.*, 982 F.2d at 1408 (refusing damages where there was insufficient evidence as to the amount of damages and collecting cases for the proposition that "[m]any courts have denied a monetary award in infringement cases when damages are remote and speculative").

■ 4. M2 Software argues that the 1999 amendments to the Lanham Act "make clear" that there is no willfulness requirement to recovery under 15 U.S.C. § 1117(a). Whatever the effects of the

1999 amendments may be, they do not apply to this suit, which was filed in October 1998. Even on the shaky assumption that the 1999 amendments did expand the remedies available for violations of § 1114 by negating the willfulness requirement, these expansions would not be retroactive. The amending statute contains no express provision mandating retroactive enforcement, and the "traditional presumption" prohibits retroactive enforcement of provision that would "increase a party's liability for past conduct." *See Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

*Attorney's Fees*

■ The district court did not abuse its discretion in failing to award costs to M2 Software after entering the permanent injunction. "The court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). Because there is no evidence that this case is "exceptional" due to malicious, fraudulent, deliberate or willful infringement, the district court was not statutorily authorized to grant M2 Software its costs. *See Gracie,* 217 F.3d at 1068.

*Waiver of Challenges to MTV2 Trademarks*

■ We affirm the district court's grant of summary judgment regarding M2 Software's claims that Viacom's use of the new MTV2 logos constitutes trademark infringement. The district court found that M2 Software waived any challenge to these logos because it failed to raise the issue in its opening brief in its first appeal to this court. M2 Software first raised the issue of confusion between its mark and the MTV2 logo in its opposition to Viacom's 1999 summary judgment motion, but then failed to raise the issue in its opening brief on its first appeal to this court. Thus, M2

Software could have raised the use of the MTV2 logo as a basis for reversing the grant of summary judgment, but failed to do so. Accordingly, M2 Software waived any challenge to the MTV2 logos by failing to raise the issue in its first appeal. Given M2 Software's waiver, we do not decide whether M2 Software is estopped by acquiescence from raising these arguments.

*Permanent Injunction*

1. M2 Software fails to argue, let alone demonstrate, that under the four traditional equitable principles that guide the issuance of injunctive relief, *see e.g., Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1138 n. 11 (9th Cir.2006), the district court abused its discretion by not enjoining marks that M2 Software asserts are confusingly similar. We therefore affirm the district court's decision not to enjoin Viacom's use of these marks.

■ 2. Our reversal of the earlier summary judgment remanded on the issue of whether the original "M2: MUSIC TELEVISION" logo created a likelihood of confusion with M2 Software's CD–ROM and software products. *M2 Software, Inc. v. Viacom, Inc.,* 30 Fed.Appx. 710 (9th Cir. 2002). It is unclear whether the district court's final judgment and permanent injunction allow Viacom future use of this logo. Although the injunction does not list the original "M2: MUSIC TELEVISION" among the marks included in the provision that "[n]othing in this judgment precludes Defendants from using," the provision does incorporate into the list "the various logos attached as *exhibits* " (emphasis added) to the injunction, including the original "M2: MUSIC TELEVISION" logo.

If the district court's permanent injunction and final order permitted Viacom's future use of this original· logo, then it prematurely precluded the only relief M2 Software may be entitled to if it can show

a likelihood of confusion between Viacom's use of the "M2: MUSIC TELEVISION" mark and M2 Software's CD–ROM or software products. Thus, we vacate the final judgment and remand to the district court to clarify whether its permanent injunction extended to Viacom's future use of the original logo. If the injunction does not bar such use by Viacom, then we remand for trial on the sole issue remaining in this case: whether there is a likelihood of confusion between the original logo and M2 Software's CD–ROM or software products that could entitle M2 Software to injunctive relief.

**AFFIRMED** in part; **VACATED** in part and **REMANDED.** The parties shall bear their own costs on appeal.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.