# United States Court of Appeals for the Federal Circuit

---

**ROMAG FASTENERS, INC.,**
*Plaintiff-Appellant*

**v.**

**FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., MACY'S RETAIL HOLDINGS, INC., BELK, INC., THE BON-TON STORES, INC., THE BON-TON DEPARTMENT STORES, INC., DILLARD'S, INC., NORDSTROM, INC., ZAPPOS.COM, INC., ZAPPOS RETAIL, INC.,**
*Defendants-Cross-Appellants*

---

2014-1856, 2014-1857

---

Appeals from the United States District Court for the District of Connecticut in Nos. 3:10-cv-01827-JBA, 3:11-cv-00929-CFD, Judge Janet Bond Arterton.

---

Decided: March 31, 2016

---

JONATHAN FREIMAN, Wiggin and Dana LLP, New Haven, CT, argued for plaintiff-appellant. Also represented by TONIA A. SAYOUR, NORMAN H. ZIVIN, Cooper & Dunham, LLP, New York, NY.

JEFFREY E. DUPLER, Gibney Anthony & Flaherty, LLP, New York, NY, argued for defendants-cross appel-

lants. Also represented by LAWRENCE BROCCHINI, Reavis
Parent Lehrer LLP, New York, NY; LAUREN ALBERT, Law
Offices of Lauren S. Albert, New York, NY; NICHOLAS
GEIGER, Cantor Colburn LLP, Hartford, CT.

---

Before DYK, WALLACH, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Romag Fasteners, Inc. ("Romag") owns U.S. Patent
No. 5,777,126 ("the '126 patent") on magnetic snap fasteners, which Romag sells under its registered trademark,
ROMAG. Romag sued Fossil, Inc. and Fossil Stores I, Inc.
(together, "Fossil"), along with retailers of Fossil products,
alleging, *inter alia*, patent and trademark infringement. A
jury found Fossil liable for both patent and trademark
infringement and made advisory awards. The district
court reduced the patent damages because of Romag's
laches and held as a matter of law that Romag could not
recover Fossil's profits for trademark infringement because the jury had found that Fossil's trademark infringement was not willful. We affirm.

## BACKGROUND

Romag sells magnetic snap fasteners (for wallets,
purses, handbags, and other products) under its registered trademark, ROMAG. The fasteners are also covered
by the claims of Romag's '126 patent. Fossil designs,
markets, and distributes fashion accessories, including
handbags and small leather goods, and contracts with
independent businesses to manufacture its products. In
2002, Fossil and Romag entered into an agreement to use
ROMAG magnetic snap fasteners in Fossil products.
Pursuant to the agreement, Fossil instructed its authorized manufacturers of handbags and other products to
purchase, where necessary, ROMAG fasteners from Wing
Yip Metal Manufactory Accessories Limited ("Wing Yip"),

a Romag licensee located in China that manufactures all of Romag's fasteners.

One of Fossil's authorized manufacturers, Superior Leather Limited ("Superior"), purchased tens of thousands of ROMAG fasteners from Wing Yip between 2002 and 2008. However, between August 2008 and November 2010, Superior purchased only a few thousand fasteners. In 2010, Howard Reiter, the founder and president of Romag, discovered that certain Fossil handbags contained counterfeit fasteners. Romag filed suit against Fossil on November 22, 2010, alleging patent infringement, trademark infringement, false designation of origin, common law unfair competition, and violation of Connecticut's Unfair Trade Practices Act. Romag moved for a temporary restraining order and preliminary injunction on November 23, 2010, three days before "Black Friday," the highest-volume shopping day in the United States (when the motion would have maximum impact on Fossil's sales).[1]

On April 4, 2014, after a seven-day trial, the jury returned a verdict finding Fossil liable for patent and trademark infringement. For patent infringement, the jury awarded a reasonable royalty of $51,052.14. For trademark infringement, the jury made an advisory award of $90,759.36 of Fossil's profits under an unjust enrichment theory, and $6,704,046.00 of Fossil's profits under a deterrence theory. But, despite determining as part of its deterrence-based award that Fossil had acted with "callous disregard" for Romag's trademark rights, the jury found that Fossil's patent and trademark in-

---

[1]    On November 30, 2010, the district court granted Romag's motion for a temporary restraining order (later converted into a preliminary injunction), enjoining Fossil from selling or offering for sale Fossil handbags bearing counterfeit ROMAG fasteners.

fringement was not willful. After a two-day bench trial to address equitable defenses and equitable adjustment of the amount of profits awarded by the jury, the district court held that Romag's delay in bringing suit until just before "Black Friday" constituted laches, and reduced the jury's reasonable royalty award for patent infringement by 18% to exclude sales made during the period of delay.[2] The district court also held as a matter of law that, because Fossil's trademark infringement was not willful, Romag was not entitled to an award of Fossil's profits.

Romag appealed, and Fossil filed a conditional cross-appeal challenging the jury instructions as to the award of profits. We have jurisdiction under 28 U.S.C. § 1295(a)(1). We review the district court's legal conclusions de novo. *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1356 (Fed. Cir. 2013). We apply our own law with respect to issues of substantive patent law and the law of the regional circuit with respect to non-patent issues. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1304 (Fed. Cir. 2009).

DISCUSSION

I

We first address Romag's argument that Fossil cannot invoke a laches defense to patent infringement. Romag relies on the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, which held that the equitable defense of laches cannot be invoked as a defense against a claim for copyright infringement. 134 S. Ct. 1962, 1974

---

[2]     Notably, in deciding whether to impose sanctions on Romag and its counsel, the district court found that Romag engaged in a pattern of misleading filings and that a declaration filed in support of a temporary restraining order was "misleading in several respects." J.A. 29–33.

(2014). After briefing in this case, we held en banc that laches remains a defense to legal relief in a patent infringement case because "Congress codified a laches defense in 35 U.S.C. § 282(b)(1)." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1321 (Fed. Cir. 2015) (en banc). As Romag conceded at oral argument, *SCA Hygiene* controls here. The district court did not err in holding that Fossil could bring a laches defense to a patent infringement claim.

## II

We next address Romag's contention that the district court erred in holding that a trademark owner must prove that the infringer acted willfully to recover the infringing defendant's profits.

## A

Before 1999, § 35(a) of the Lanham Act, codified at 15 U.S.C. § 1117(a), provided that plaintiffs who had established "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section § 1125(a) of this title . . . shall be entitled . . . *subject to the principles of equity*, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (1996) (emphasis added) (amended 1999).

The Supreme Court has never addressed whether proof of willfulness is required to recover the infringer's profits either as a matter of traditional equitable principles or under the pre-1999 version of § 1117(a). The closest the Court came was in a pre-Lanham Act decision, *Saxlehner v. Siegel-Cooper Co.*, 179 U.S. 42 (1900). There, the Court held that, under the common law, "an injunction should issue against [three trademark infringers], but that, as [one defendant] appears to have acted in good faith, and the sales of the other[] [defendants] were small, they should not be required to account for gains and

profits." *Id.* at 42–43. In contrast, in *Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.*, another pre–Lanham Act decision, the Court affirmed an accounting of the infringer's profits where the "defendant [did] not stand as an innocent infringer" but, rather, "the findings of the court of appeals, supported by abundant evidence, show[ed] that the imitation of complainant's mark was fraudulent, [and the defendant] persiste[d] in the unlawful simulation in the face of the very plain notice of [the trademark owner's] rights." 240 U.S. 251, 261 (1916); *see also McLean v. Fleming*, 96 U.S. 245, 257 (1877) (reversing an award of an accounting of profits where "acquiescence of long standing [was] proved . . . and inexcusable laches in seeking redress" and explaining that an accounting is "constantly refused . . . in case[s] of acquiescence or want of fraudulent intent").

The *Restatement of Unfair Competition*, beginning with a tentative draft approved in 1991 and as eventually adopted in 1993, took the position that "[o]ne . . . is liable for the net profits earned on profitable transactions resulting from [trademark infringement], but only if . . . the actor engaged in the conduct with the intention of causing confusion or deception." *Restatement (Third) of Unfair Competition* § 37(1) (1995); *Restatement (Third) of Unfair Competition* § 37(1) (Tent. Draft. No. 3, 1991). Before 1999, however, there was a division in the courts of appeals as to whether willfulness was required under the "principles of equity" standard adopted in the statute.

Several courts of appeals determined that a finding of willfulness was required for an award of the defendant's profits. Among these was the Second Circuit, whose law governs here. The Second Circuit took the view that "under [15 U.S.C. § 1117(a)] of the Lanham Act, a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992); *see also Int'l Star Class*

*Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996) ("In order to recover an accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith."). The Second Circuit reasoned that "this requirement is necessary to avoid the conceivably draconian impact that a profits remedy might have in some cases. While damages directly measure the plaintiff's loss, *defendant's* profits measure the defendant's gain. Thus, an accounting may overcompensate for a plaintiff's actual injury and create a windfall judgment at the defendant's expense." *Id.* (citing the *Restatement (Third) of Unfair Competition* § 37 cmt. e (Tent. Draft. No. 3, 1991)). And, in the Second Circuit, while "a finding of willful deceptiveness is necessary in order to warrant an accounting for profits . . . it may not be sufficient"—

> generally, there are other factors to be considered. Among these are such familiar concerns as: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands. The district court's discretion lies in assessing the relative importance of these factors and determining whether, on the whole, the equities weigh in favor of an accounting. As the Lanham Act dictates, every award is "subject to equitable principles" and should be determined "according to the circumstances of the case."

*George Basch*, 968 F.2d at 1540–41 (citations omitted).

Before the 1999 amendment, the District of Columbia Circuit also held that "an award based on a defendant's profits requires proof that the defendant acted willfully or in bad faith," *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 968 (D.C. Cir. 1990) (Thomas, J.), as did the Third Circuit, *SecuraComm Consulting Inc. v. Securacom*

*Inc.*, 166 F.3d 182, 190 (3d Cir. 1999) (Alito, J.) ("[A] plaintiff must prove that an infringer acted willfully before the infringer's profits are recoverable."), *overruled by Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d Cir. 2005), and the Tenth Circuit, *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998) (an award of profits requires proof that "defendant's actions were willful or in bad faith").[3]

But the willfulness requirement was not uniformly adopted. The Fifth Circuit held that "whether the defendant had the intent to confuse or deceive" is simply a "relevant factor[] to the court's determination of whether an award of profits is appropriate." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998); *see also Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989) ("Other than general equitable considerations, there is no express requirement that . . . the infringer wilfully infringe the trade dress to justify an award of profits."); *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 607 (6th Cir. 1991) (holding that the plaintiff is not required to prove actual confusion to recover profits, and quoting the Seventh Circuit rule that "there is no express requirement . . . that the infringer willfully infringe . . . to justify an award of profits") (internal quotation marks omitted) (quoting *Roulo*, 886 F.2d at 941); *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) ("Nor is an award of profits based on either unjust enrichment

---

[3]    *See also Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 6 (1st Cir. 1993) ("[D]amages have never been allowed under the deterrence or unjust enrichment theories absent some form of fraud.") (internal quotation marks omitted); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (an accounting of profits was not justified where a "trademark was weak and Bic's infringement was unintentional").

or deterrence dependent upon a higher showing of culpability on the part of the defendant, who is purposely using the trademark.").

Romag argues that *George Basch* and other pre-1999 authority requiring willfulness are no longer applicable in light of the 1999 statutory amendment to the Lanham Act.

Understanding the 1999 amendment requires starting in 1996. Before 1996, and at the time of the Second Circuit's decision in *George Basch*, the monetary relief provisions of the Lanham Act permitted recovery only for violations of § 1125(a), i.e., trademark infringement and false advertising. In 1996, Congress amended the Lanham Act to create a cause of action for trademark dilution, providing for injunctive relief and also monetary relief if the dilution was "wilfully intended." *See* Federal Trademark Dilution Act of 1995, Pub. L. No. 104-98, § 3, 109 Stat. 985, 985–86 (1996) (codified at 15 U.S.C. § 1125(c) (1997)).[4]

---

[4]    Section 1125, as amended in 1996, provided,

(a) Civil action

(1) Any person who, on or in connection with any goods or services . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, . . . as to the affiliation, connection, or association of such person with another person . . . or,

> (B) in commercial advertising or promotion, misrepresents the nature . . . of his or her or

But the effort to award monetary relief for willful dilution was ineffective because the new dilution provision made available "the remed[y] set forth in section[] 1117(a)" without amending § 1117(a) to provide for such

---

> another person's goods, services, or commercial activities,

shall be liable in a civil action . . . .

(b) Importation

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States . . . .

(c) Remedies for dilution of famous marks

(1) The owner of a famous mark shall be entitled, subject to the principles of equity . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. . . .

(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 [(i.e., destruction of infringing articles)] of this title, subject to the discretion of the court and the principles of equity. . . .

15 U.S.C. § 1125 (1997) (1996 amendment underscored).

monetary remedies in the case of dilution. *Id.* In 1999, Congress amended § 1117(a) to correct this error. *See* Trademark Amendments Act of 1999, Pub. L. No. 106-43, § 3(b), 113 Stat. 218, 219.[5] The current version of § 1117(a) reads,

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) <u>or (d)</u> of this title<u>, or a willful violation under section 1125(c) of this title,</u> shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a) (2014) (new language added by 1999 amendment underscored).

---

[5]    The 1999 amendment substituted the phrase "a willful violation under [section 1125(a)] of this title, or a willful violation under [section 1125(c)] of this title," for "a violation under [section 1125(a)] of this title." Trademark Amendments Act of 1999, Pub. L. No. 106-43, § 3(b), 113 Stat. 218, 219. Later in 1999, Congress amended § 1117(a) to insert ", (c), or (d)" after "[section 1125(a)]" in the first sentence. Anticybersquatting Consumer Protection Act, Pub. L. No. 106-113, § 3003, 113 Stat. 1501, 1501A-549 (1999). In 2002, Congress removed the redundant reference by substituting "a violation under [section 1125(a)] or (d) of this title," for "a violation under [section 1125(a)], (c), or (d) of this title." Intellectual Property and High Technology Technical Amendments Act of 2002, Pub. L. No. 107-273, § 13207(a), 116 Stat. 1758, 1906.

Romag contends that the 1999 change made clear that "Congress chose to make willful infringement a prerequisite to recovery of monetary relief for trademark *dilution*," but when "Congress chose not to insert 'willful' before 'violation under section 43(a) [1125(a)],' [it] made plain that it did not intend willful infringement to be a prerequisite to recovery of monetary relief for the other types of infringement covered by that section, including the sale of counterfeits." Appellant's Br. at 37.

This argument has had varied success in the courts of appeals. After the 1999 amendment, the Fifth Circuit continued to hold that willfulness is not a prerequisite to an award of infringer's profits for violations of § 1125(a). *See Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002) ("In accordance with our previous decisions, and in light of the plain language of § 1117(a), however, we decline to adopt a bright-line rule in which a showing of willful infringement is a prerequisite to an accounting of profits."). The Third Circuit reversed course, holding that the 1999 amendment barred a willfulness requirement, *see Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005) ("By adding this word ['willful'] to the statute in 1999, but limiting it to [§ 1125(c)] violations, Congress effectively superseded the willfulness requirement as applied to [§ 1125(a)]."), and the Fourth Circuit held that a finding of willfulness is not required, *see Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("[A]lthough willfulness is a proper and important factor in an assessment of whether to make a damages award, it is not an essential predicate thereto."); *see also Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 424 (6th Cir. 2010) ("Although showing willfulness is not required, willfulness is one element that courts may consider in weighing the equities.").

Other courts of appeals considering the issue found a willfulness requirement for an award of the infringer's profits. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A.,*

*Inc.*, 778 F.3d 1059, 1073–74 (9th Cir. 2015) ("Awarding profits is proper only where the defendant is attempting to gain the value of an established name of another. Willful infringement carries a connotation of deliberate intent to deceive.") (quoting *Lindy Pen*, 982 F.2d at 1406), *cert. denied*, 136 S. Ct. 410; *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 656 (9th Cir. 2007) (characterizing the argument that the 1999 amendment negated the willfulness requirement as a "shaky assumption"); *see also Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 191 (1st Cir. 2012) ("[O]ur cases usually[, with the exception of direct competition cases,] require willfulness . . . to allow either (1) more than single damages or (2) a recovery of the defendant's profits."); *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1270 (10th Cir. 2005) ("We hold that the willfulness required to support an award of profits under the Lanham Act typically requires an intent to appropriate the goodwill of another's mark."); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.62 (2015) ("Th[e] reading of Congressional intent [as removing the willfulness requirement] is inaccurate. In fact, the 1999 amendment of Lanham Act § 35(a) was not intended to change the law by removing willfulness as a requirement for an award of profits in a classic infringement case, but rather was meant to correct a drafting error . . . . The courts have leveraged this statutory change beyond its intended scope . . . .").

Critically important for us, however, is the rule followed in the Second Circuit. Contrary to Romag's argument, the willfulness rule was reaffirmed by the Second Circuit. In *Merck Eprova AG v. Gnosis S.p.A.*, a district court found that Gnosis had misrepresented the purity of certain nutritional supplement products and was liable for violating section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). 760 F.3d 247, 252–53 (2d Cir. 2014). The district court found that Gnosis had willfully deceived its

customers and awarded Gnosis's profits to prevent its unjust enrichment, to compensate Merck for the business it lost as a result of Gnosis's false advertising, and to deter future unlawful conduct. *Id.* at 262. The Second Circuit restated its rule that "a finding of defendant's willful deceptiveness is a prerequisite for awarding profits," *id.* at 261 (quoting *George Basch*, 968 F.2d at 1537), and affirmed the district court's award of profits, as "willful, deliberate deception [had] been proved," *id.* at 262.

While the Second Circuit has not directly addressed the 1999 amendment,[6] we see nothing in the 1999 amendment that permits us to declare that the governing Second Circuit precedent is no longer good law.

First, the limited purpose of the 1999 amendment was simply to correct an error in the 1996 Dilution Act. The legislative history of the Trademark Amendments Act of 1999 does not indicate that Congress contemplated its addition of "or a willful violation under section § 1125(c),"

---

[6] *See Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013) (noting that "some of our sister circuits [held] that a 1999 amendment to the Lanham Act changed the governing rule" regarding willfulness, but "assuming arguendo that [the trademark owner] [was] still required to prove willfulness" and finding that the district court properly determined that the defendant willfully infringed).

The Eighth Circuit has also recognized the question presented by the 1999 amendment but has not yet resolved the issue. *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 n.2 (8th Cir. 2011) (acknowledging the issue of the "effect of amendments to the Lanham Act Congress made in 1999" but "assum[ing], without deciding, that willful infringement is a prerequisite of monetary relief").

as affecting any change to the willfulness requirement for violations of § 1125(a). *See* H.R. Rep. No. 106-250, at 6 (1999). Rather, the legislative history indicates only that Congress sought to correct the mistaken omissions, from the text of 15 U.S.C. §§ 1117(a) and 1118, of willful violations of § 1125(c). *Id.*[7] In short, there is no indication that Congress in 1999 intended to make a change in the law of trademark infringement as opposed to dilution. The history does not even acknowledge the pre-1999 split in the courts of appeals on the willfulness requirement for a recovery of infringer's profits, much less indicate a desire to change it. Given the alleged significance of the purported change, one would have expected to see an acknowledgement or discussion from Congress of the courts of appeals cases in the relevant area if Congress had intended to resolve the circuit conflict. *See Dir. of Revenue of Mo.*

---

[7]    The House Judiciary Committee Report stated,

[s]ection three seeks to clarify that in passing the [Federal Trademark] Dilution Act, Congress did intend to allow for injunctive relief and/or damages against a defendant found to have wilfully intended to engage in commercial activity that would cause dilution of a famous mark. . . . The language of the Dilution Act presented to the President for signing did not include the necessary changes to sections 35(a) [1117(a)] and 36 [1118] of the Trademark (Lanham) Act of 1946 as referred to in the Dilution Act. Therefore, in an attempt to clarify Congress' intent and to avoid any confusion by courts trying to interpret the statute, section three makes the appropriate changes to sections 35(a) [1117(a)] and 36 [1118] to allow for injunctive relief and damages.

*See* H.R. Rep. No. 106-250, at 6.

*v. CoBank ACB*, 531 U.S. 316, 323–24 (2001) ("[I]t would be surprising, indeed, if Congress . . . made a radical—but entirely implicit—change . . . [with a] 'technical and conforming amendment[].'") (citation omitted); *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) (Congress does not "hide elephants in mouseholes.").

Second, the language of the statute as to infringement liability remained unchanged with regard to the award of profits under the "principles of equity." 15 U.S.C. § 1117(a). By reenacting that standard, Congress could not have ratified a consistent judicial construction of § 1117(a) because there was a split in the courts of appeals, at the time of the 1999 amendment, as to the willfulness requirement. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 349 (2005) (holding that Congress could not have ratified a "settled construction" of a statute, because there was no "judicial consensus so broad and unquestioned that we must presume Congress knew of and endorsed it"); *Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 299 (1995) (no ratification where cases "were not uniform in their approach").

Third, the inserted language concerning willfulness in dilution cases does not create a negative pregnant that willfulness is always required in dilution cases but never for infringement. The cases relied on by Romag where a negative pregnant was inferred involve statutory provisions enacted at the same time. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 172–73 (2001) (comparing 28 U.S.C. § 2244(d)(2) with §§ 2254(i), 2261(e), and 2264(a)(3), all enacted by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) (comparing two provisions "enacted at the same time"). The evolution of § 1117(a) is more comparable to when two closely related statutes are enacted at different times. *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 647 (2010); *id.* at 656 (Scalia, J., concurring). We do not think

that Congressional intent can be inferred from an amendment passed years after the fact to address a drafting error. *See* H.R. Rep. No. 106-250, at 6 (1999).

In any event, the "willful violation" language added in 1999 to cover dilution cannot simply be explained as a desire to distinguish dilution cases from violations of § 1125(a) for purposes of profits awards. The "willful violation" language was necessary to distinguish dilution cases from, *inter alia*, infringement cases in the area of damages (as opposed to profits), since it was established in the courts of appeals that willfulness was not required for damages recovery, *see* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.75 (2015), and Congress wished to limit damages awards for dilution to cases involving willfulness. So too, even with respect to awards of profits in dilution cases, the addition of "willful violation" was necessary to establish a uniform rule since the courts of appeals were divided as to the willfulness requirement in the infringement context, and silence might have generated a circuit split in the dilution area.

In sum, we see nothing in the 1999 amendment that allows us to depart from Second Circuit precedent requiring willfulness for the recovery of profits in infringement cases.

## B

In a final effort to find support for its position in the Lanham Act, Romag argues that various other provisions of the Act assume that there is no willfulness requirement for the award of an infringer's profits. We are unconvinced. Section 1117(c) provides for statutory damages as an alternative to actual damages and profits for counterfeit marks, allowing a higher statutory award for willful use of counterfeit marks. Nothing can be inferred from this provision, particularly since it applies both to damages and profits, and then only in cases of counterfeiting.

Similarly uninformative is the imposition of a fraud or bad faith requirement for the award of attorney's fees, *see Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108, 111 (2d Cir. 2012), and the two exceptions in § 1117(a) to monetary liability for two categories of innocent infringers—infringers who had no notice under § 1111, and certain "innocent infringers," e.g., those "engaged solely in the business of printing the mark" or a "publisher or distributor of [a] newspaper, magazine, or other similar periodical or electronic communication" with paid advertising matter containing the mark, § 1114(2)(A), (B). Romag also argues that "early bills that ultimately culminated in the Lanham Act explicitly provided that 'there shall be no recovery of profits from any defendant whose adoption and use of an infringing mark was in good faith . . . ,'" and that the absence of that language in the Lanham Act indicates that Congress rejected that limitation. Appellant's Br. at 51–52. We are not persuaded that this limitation in the proposed acts, reflecting the common law of trademarks, was not incorporated within the Lanham Act's "principles of equity" standard. *See, e.g.*, H.R. 13109, 70th Cong. § 30 (1928) ("[T]his Act is declaratory of the common law of trademarks . . . and in case of doubt its provisions are to be construed accordingly.").

We conclude that the 1999 amendment to the Lanham Act left the law where it existed before 1999—namely, it left a conflict among the courts of appeals as to whether willfulness was required for recovery of profits. We accordingly follow the Second Circuit's decision in *George Basch* as reaffirmed in *Merck*. Under that standard, we agree with the district court that Romag is not entitled to recover Fossil's profits, as Romag did not prove that Fossil infringed willfully.

## III

Fossil submits a conditional cross-appeal challenging the jury instructions as to profits. Because we affirm, we do not reach the questions presented by the conditional cross-appeal.

## AFFIRMED

### COSTS

Costs to Fossil.